Gary WOODS, as Tax Matters Partner of Tesoro Drive Partners, Plaintiff

v.

UNITED STATES of America, Defendant.

Gary Woods, as Tax Matters Partner of SA Tesoro Investment Partners, Plaintiff

v.

United States of America, Defendant.

Nos. SA–05–CA–216, SA–05–CA–217.

United States District Court, W.D. Texas.

March 31, 2011.

Anthony P. Daddino, Joel N. Crouch, Michael E. McCue, Stephanie D. Mongiello, Meadows, Collier, Reed, Cousins & Blau, L.L.P., Dallas, TX, for Plaintiff.

Dennis M. Donohue, John A. Lindquist, Department of Justice–Tax Division, Washington, DC, Jonathan L. Blacker, Joseph A. Pitzinger, Department of Justice, Tax Division, Dallas, TX, for Defendant.

### ORDER REGARDING OBJECTIONS TO ACCURACY–RELATED PENALTIES

HARRY LEE HUDSPETH, Senior District Judge.

Plaintiff Gary Woods, in his capacity as Tax Matters Partner for two general partnerships [1] filed these petitions for judicial review of final partnership administrative adjustments made by the Internal Revenue Service with respect to the partnership returns for taxable year 1999. As the principal place of business of each partnership was located in San Antonio, Texas, this Court has jurisdiction under 26 U.S.C. § 6226(a)(2). Following a bench trial in September 2010, the Court entered an order granting the Defendant's motion for judgment as a matter of law. In doing so, the Court held that the ordinary and capital losses claimed in the partnership tax returns were properly disallowed by the Commissioner, because the complicated series of transactions which generated the purported paper losses lacked economic substance. Accordingly, the Court held that the Defendant was entitled to judgment in its favor with respect to the administrative adjustments to the partnership returns of Tesoro Drive Partners and SA Tesoro Investment Partners. Left unresolved was the question whether the imposition of accuracy-related penalties was justified. The Court invited the parties to submit briefs on that question, and those briefs were filed. The issue is now ripe for decision.

As noted in the Order Granting Defendant's Motion for Judgment as a Matter of Law, the partnership tax items at the center of this dispute resulted from the November 1999 decision of Plaintiff Woods to participate, on his own behalf and on behalf of his associate, Billy Joe "Red" McCombs, in a tax shelter known as COBRA.[2] This tax avoidance strategy was dreamed up by the law firm of Jenkins & Gilchrist, marketed by the accounting firm of Ernst & Young, and assisted in its

---

1. The partnerships in question were Tesoro Drive Partners (Cause No. SA–05–CA–216) and SA Tesoro Investment Partners (Cause No. SA–05–CA–217).

2. The initials COBRA stands for "Current Options Bring Reward Alternatives."

implementation by another law firm, Brown & Wood, A few selected high net worth individuals were invited in the year 1999 to participate in COBRA, which even its proponents described as an "aggressive" strategy. Its purpose, in common with other forms of tax shelters, was to generate large paper losses to be set off against large amounts of income which a participant expected to receive in that particular year.

At the time that Woods elected to participate in COBRA in November 1999, barely enough time remained to complete all the steps required by the COBRA scenario before December 31st of that year. However, the two Tesoro partnerships, under the guidance of Woods, did complete the process in time to transfer all their remaining assets to two Sub-chapter S corporations,[3] effectively liquidating both partnerships. Those two Sub-chapter S entities then sold the assets, which the tax returns claimed resulted in an ordinary loss of $13,353,162 and a short-term capital loss of $32,297,786. In the final partnership administrative adjustments, these losses were disallowed.

The Defendant contends that in addition to disallowing the losses claimed on the partnership returns, the Commissioner was justified in imposing three categories of accuracy-related penalties: (1) a penalty for gross or substantial misstatement of valuation; (2) a penalty for negligence or disregard of rules and regulations; and (3) a penalty for substantial understatement of income tax. 26 U.S.C. § 6662. The Court will discuss each category in turn.

■ With respect to the first penalty, the statute defines "valuation misstatement" as including misstatements relating either to value or to basis, 26 U.S.C. § 6662(e)(1)(A). In this Circuit, however, it is clearly established that whenever the Internal Revenue Service totally disallows a deduction, it may not penalize the taxpayer for a valuation overstatement included in that deduction. In such a case, the underpayment is not attributable to a valuation overstatement; it is attributable to claiming an improper deduction. *Heasley v. Commissioner of Internal Revenue*, 902 F.2d 380, 383 (5th Cir.1990). Counsel for the Defendant contends that because of the passage of time and intervening events, *Heasley* is no longer good law. However, until and unless *Heasley* is overruled by the Court of Appeals or the Supreme Court, this Court is bound by its holding.[4] The Court must respectfully decline the invitation by defense counsel to overrule the Court of Appeals.

■ The Commissioner next imposed a penalty on the alleged underpayment of tax based on a finding of negligence or disregard of rules and regulations on the part of the taxpayer, pursuant to 26 U.S.C. §§ 6662(a) and (b)(1). The statute defines "negligence" to include any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, and "disregard" to include reckless or intentional, as well as careless, conduct. § 6662(c).

■ The inquiry into a taxpayer's negligence has been described as "highly individualized," *Merino v. Commissioner*, 196 F.3d 147, 154 (3rd Cir.1999), but the Court should begin that inquiry by matching the taxpayer's conduct against that of a reasonably prudent person. *Heasley*, 902 F.2d at 383; *Marcello v. Commissioner*, 380 F.2d 499, 506 (5th Cir.1967). Neg-

---

**3.** Those corporations were Tesoro Drive Investors, Inc. and SA Tesoro Investors, Inc.

**4.** The Court of Appeals for the Fifth Circuit has been invited to revisit *Heasley* in a case styled *Southgate Master Fund v. United States*, Appeal No. 09–11166. At this writing, the Court of Appeals has held oral argument in that appeal, but has not ruled.

ligence may be indicated by a taxpayer's failure to question a deduction which seems "too good to be true." *Hansen v. Commissioner,* 471 F.3d 1021, 1029 (9th Cir.2006). The justification for the imposition of a penalty may be even more clearly defined if the circumstances indicate reckless or intentional disregard, not just a failure to exercise ordinary-care. *Marcello,* 380 F.2d at 506.

■ Where, as here, the Commissioner's finding of negligence and/or disregard is challenged, it is appropriate for the Court to consider the level of knowledge and sophistication of the individual taxpayer. *Merino,* 196 F.3d at 154. In this case, Plaintiff Woods' knowledge of business in general and accounting in particular was both broad and deep. He earned a Bachelor's degree in business administration from Southwest Texas State (now Texas State) University, and his formal education continued with a Master's degree from Southern Methodist University and course work toward a Ph.D. at the University of North Texas. He is a Certified Public Accountant, licensed in the State of Texas. His practical experience and business acumen are also impressive. He occupied a key management role in McCombs Enterprises, which invested in everything from car dealerships to professional sports teams in the National Basketball Association and the National Football League. Although Plaintiff Woods may not have qualified as a "tax specialist," he was a far cry from a man who had just fallen off a turnip truck. His wealth of knowledge and experience should have alerted him to the fact that the COBRA scheme was simply "too good to be true." Specifically, he was aware from the start that the complicated, rapid-fire, series of transactions called for by the COBRA plan were for the sole purpose of generating a large paper loss for tax purposes, and he also knew, or

should have known, that these transactions did not possess "economic substance compelled by business or regulatory realities." *Klamath Strategic Investment Fund v. United States,* 568 F.3d 537, 544 (5th Cir. 2009). By Woods' own admission, he was aware that tax shelter entities are required to have a business purpose, and to possess economic substance. Under all the circumstances, his tax treatment of the "losses" generated by the COBRA transactions on the Tesoro partnership returns was at best negligent, and at worst, reckless or intentional disregard of established regulations. Accordingly, the Commissioner was justified in imposing the penalty for negligence or disregard of rules and regulations.

■ The Commissioner imposed yet another accuracy related penalty on the portion of underpayment of tax which he concluded was attributable to a substantial understatement of income tax. Although such a penalty is authorized by § 6662(b)(2), the statute further provides that the amount of any such understatement would be reduced, if (1) the tax treatment of the item in question was based on "substantial authority," or (2) the relevant facts affecting the tax treatment of the item are disclosed in the return itself or an attached statement, and there is a reasonable basis for the treatment chosen by the taxpayer. § 6662(d)(2)(B), However, where, as here, a tax shelter is involved, the "disclosure prong" (§ 6662(d)(2)(B)(ii)) does *not* apply, and a heightened standard is applied to the "substantial authority" prong. § 6662(d)(2)(C). In the tax shelter context, the taxpayer must go beyond demonstrating the existence of substantial authority, and demonstrate his own reasonable belief that his treatment of the item in question was "more likely than not" the proper treatment of the item. § 6662(d)(2)(C)(i)(II).[5] It is beyond dis-

5. The statute has been amended since these events occurred. Today, none of the excep-

pute that the cobra plan was a tax shelter, and that the Tesoro partnerships were organized for the specific purpose of executing the COBRA tax avoidance strategy. Therefore, the heightened standard applies.

Was there "substantial authority" for Woods' treatment of the COBRA induced tax loss? The short answer is, there was not. It was obvious to Woods, as it would have been to anyone with his background and experience, that the COBRA transactions did not possess economic substance, and were being undertaken for the sole purpose of establishing a large paper tax loss. To put it another way, COBRA was marketed to everyone, including Woods, as a tax shelter, and a tax shelter it was. Furthermore, the tax opinions rendered by the law firms of Jenkins & Gilchrist and Brown & Wood do not qualify as "substantial authority." Not only were those opinions tainted by the involvement of their authors in the COBRA scheme (of which more later), but the authorities on which those authors purport to rely cannot justify the deduction of paper losses generated by transactions lacking economic substance and executed for the sole purpose of creating a tax benefit.

Assuming *arguendo* the existence of substantial authority, Woods must further show that he "reasonably believed" that his tax treatment of the COBRA losses was "more likely than not" the proper treatment of those items. § 6662(d)(2)(c)(i)(II). The reasonable belief requirement overlaps substantially with the "reasonable cause and good faith" defense found in 26 U.S.C. § 6664(c), and the two will be considered together.

▇▇▇ The statutory "reasonable cause" exception to the penalty for underpayment of tax provides that no penalty will be imposed as to any portion of an underpay-

ment with respect to which the taxpayer acted with reasonable cause and good faith. § 6664(c)(1). The taxpayer has the burden of establishing this defense. *Klamath*, 568 F.3d at 548, which has been described as a "narrow" defense. *Stobie Creek Investments LLC v. United States*, 608 F.3d 1366, 1381 (Fed.Cir.2010). The existence or non-existence of reasonable cause is a question of fact decided on a case-by-case basis. Treas. Reg. § 1.6664–4(b)(1). As in most cases, Woods attempts to show reasonable cause by contending that he relied upon the advice of competent and independent professional advisers. *United States v. Boyle*, 469 U.S. 241, 251, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985); *Stobie Creek*, 608 F.3d at 1381.

Plaintiff Woods contends that he reasonably relied on the advice of an accounting firm, Ernst & Young, and two law firms, Jenkins & Gilchrist and Brown & Wood. However, he cannot sustain his burden of showing that his reliance on their advice was objectively reasonable. First, each of the three had an inherent conflict of interest which was too obvious to be ignored. *Chamberlain v. Commissioner*, 66 F.3d 729, 732 (5th Cir.1995); *Stobie Creek*, 608 F.3d at 1382. The firm of Jenkins & Gilchrist was the inventor and promoter of the COBRA strategy, and Ernest & Young and Brown & Wood were, at the very least, agents of the promoter. From the moment he was first introduced to COBRA in November 1999, Woods had actual knowledge of the role of Jenkins & Gilchrist in developing, and Ernst & Young in marketing, the COBRA strategy. He also knew that the fees charged by each of those firms would be based on a percentage of the "desired loss"! Although the involvement of Brown & Wood was not known until later, Woods was told up front that a second opinion would be obtained

tions contained in § 6662(d)(2)(B) are applicable to items attributable to a tax shelter.

for the purpose of making the tax deduction "penalty proof." The firm of Brown & Wood was not selected by Plaintiff Woods, but by Jenkins & Gilchrist, and its fee was not extra, hut was "carved out" of the fee paid to Jenkins & Gilchrist. In short, Brown & Wood was not an "independent" professional adviser in any common ordinary English language dictionary meaning of that word.

Second, Woods' claim of reliance on professional advice is not objectively reasonable because he knew or should have known that the COBRA tax benefit was "too good to be true" in light of all the circumstances, including his own education, business experience, sophistication, and his purpose in carrying out the COBRA transactions. Treas. Reg. § 1.6664–4(c); *Hansen*, 471 F.3d at 1032; *Stobie Creek*, 608 F.3d at 1382.

Third, any claim of reasonable reliance which might have been arguable prior to December 1999 dissolved when the Internal Revenue Service issued, and when Ernst & Young and Woods became aware of, IRS Notice 99–59. That Notice unequivocally warned taxpayers that artificial losses of the COBRA kind were not properly allowable for federal income tax purposes. Ernst & Young personnel immediately grasped the significance of the IRS warning as it related specifically to COBRA, and just as quickly (1) discontinued marketing the strategy, and (2) notified its clients, including Plaintiff Woods. December 1999 was, of course, before the filing of the Tesoro partnership returns. If all the alerts previously discussed in this opinion could be termed "red flags," IRS Notice 99–59 was more like a dagger to the heart of any claim of reasonable reliance on advice received from the likes of Ernst & Young, Jenkins & Gilchrist, or Brown & Wood.

In summary, the Court finds that Plaintiff Woods has failed to sustain his burden of proving that when the partnership returns in this case were filed, he reasonably believed that his tax treatment of the purported losses was "more likely than not" the proper treatment of these items, or that he acted with reasonable cause or good faith, as case law has defined those terms. The Commissioner's imposition of a penalty on that portion of the underpayment attributable to the substantial understatement of income tax should be affirmed.

In light of the foregoing discussion, the Court finds that the following orders should be entered.

IT IS ORDERED that the Commissioner's imposition of a penalty for misstatement of valuation be, and it is hereby, REVERSED.

IT IS FURTHER ORDERED that, in all other respects, judgment be, and it is hereby, entered in favor of the Defendant United States of America, and that the rulings of the Commissioner of Internal Revenue be, and they are hereby, AFFIRMED.